RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0176p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

YOUNG HEE KWAK,

                                    *Petitioner,*

                                                                    No. 09-3681

          *v.*

ERIC H. HOLDER, JR., United States Attorney
General,

                                    *Respondent.*

On Petition for Review from the
United States Board of Immigration Appeals.
No. A074 766 389.

Decided and Filed:  June 16, 2010

Before:  KEITH, COLE, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:**  Scott Bratton, MARGARET WONG & ASSOCIATES CO., LPA, Cleveland,
Ohio, for Petitioner.  Jesse L. Busen, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

_____

**OPINION**

_____

        JULIA SMITH GIBBONS, Circuit Judge.  Petitioner–appellant Young Hee Kwak
petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming
an order of the immigration judge ("IJ") denying Kwak's application for a continuance of
proceedings and entering an order of removal.  For the reasons that follow, we affirm the
BIA's decision and deny Kwak's petition for review.

1

I.

Young Hee Kwak, a native and citizen of South Korea, was detained upon reentry to the United States on April 26, 1996. Five days prior, Kwak had married a naturalized United States citizen of South Korean birth. According to Kwak, before visiting South Korea for the marriage, he had been a student in New York and had moved to Cleveland with his fiancée shortly before the wedding trip. Upon entry, immigration officials determined that Kwak possessed an expired visa that had been modified to appear current. Kwak confessed that he and a friend altered the document and assured officials that he had a valid visa in Cleveland that he had forgot to bring with him to South Korea. The Immigration and Naturalization Service ("INS") charged Kwak with procuring a visa or other documentation by fraud and seeking to procure entry into the United States by fraud and with appearing not to be in possession of a valid visa in violation of 8 U.S.C. §§ 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I).

The INS granted Kwak a ninety-day visa to attend deferred exclusion proceedings against him in May 1996. After a continuance to permit a change of venue, a second hearing was held in Detroit, Michigan, on January 30, 1998. At that point, the IJ issued a second continuance to await the outcome of Kwak's wife's I-130 petition to establish relative status, which Kwak intended to use to apply for an adjustment of status. The I-130 was later approved. Kwak was granted a third continuance in August 1998 but failed to appear at the next scheduled appearance on September 17, 1999, at which point the IJ continued proceedings until February 4, 2000.

On April 28, 2000, the IJ granted Kwak's motion to close his case administratively in order to permit the adjudication of his applications for a waiver of grounds of excludability (I-601 petition) and an adjustment of status (I-485 petition). The INS denied both applications on January 14, 2003, and the government subsequently moved to reopen and recalendar Kwak's case. Exclusion proceedings were reopened, and the IJ issued a two-month continuance at the first hearing on April 4, 2006, because Kwak had only retained counsel the preceding day. In the meantime, Kwak appealed the denial of his I-601 to the Administrative Appeals Unit ("AAU") of the United States Citizenship and Immigration Services ("USCIS"), which had since succeeded the INS. Consequently, Kwak requested

another continuance at his June 6, 2006, exclusion hearing. The government agreed, and the IJ continued proceedings until November 28, 2006. At that hearing, Kwak's counsel requested "one more continuance" on the ground that Kwak was awaiting the outcome of his appeal to the AAU of a denial of an I-140 petition for permanent status as an alien worker. The government did not object but noted that "by the next hearing we require [r]elief []or . . . some sort of forward progress on the case." The IJ granted the continuance but noted that "[i]t's the last continuance . . . , even if the Government wants to give another continuance." On March 6, 2007, the government again did not object to another motion for continuance because an AAU decision on the denied I-601 was expected within several months. The IJ granted the continuance but warned that "this really is the final continuance and I wish that both sides would know that."

At the subsequent July 17, 2007, exclusion hearing, Kwak again requested a continuance pending the AAU determination. The government opposed, and the IJ stated that he was "going to review the case further . . . [and he would] either send [Kwak] a Hearing Notice or . . . a final order in the case in a few days." The IJ continued the proceedings, but the AAU appeal was still pending at the next scheduled hearing on September 11, 2007. The IJ again stated that he would review the case before issuing either a continuance or a final order. The government registered its objection to what would be the tenth continuance in the case and the sixth since reopening the case.

On September 13, 2007, the IJ denied Kwak's request for a continuance and issued an order of removal. The IJ noted that Kwak's case had been administratively closed pending adjudication by the USCIS, that the Department of Homeland Security ("DHS") had finally denied Kwak's applications in 2003, and that Kwak had received "numerous continuances" since the case was reopened to permit adjudication by the AAU. The IJ further recognized that "[i]t is not an abuse of discretion for the [IJ] to deny a motion for a continuance after repeated continuances have been granted, based on the possibility that the proper documentation may be approved in the future, and that the Respondent at some point may be eligible for adjustment of status."

The BIA affirmed the IJ's denial of the continuance. Pointing out the lengthy procedural history of the case and the number of prior granted continuances, the BIA agreed

that Kwak failed to show good cause for yet another.  Citing *Matter of Hashmi*, 24 I. & N. Dec. 785 (2009), which was handed down after the IJ issued his order, the BIA found that Kwak had not demonstrated that he was likely to succeed on the merits of his AAU appeal and had not even set out the grounds for his appeal.  The BIA also relied on the DHS's opposition to this continuance as an additional ground for the IJ's denial.  Kwak timely petitioned this court for review of the BIA's decision.

## II.

We have jurisdiction to review final orders of removal subject to the limitations of 8 U.S.C. § 1252(a)(2).  8 U.S.C. § 1252(a)(1).  Subsection (B)(ii) of that provision states that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ."  In *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 633–34 (6th Cir. 2006), we held that although the grant of a motion for a continuance is at the discretion of the IJ pursuant to 8 C.F.R. § 1003.29, we have jurisdiction to review an IJ's denial of such a motion.  However, the Supreme Court's recent decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010), calls into question the reasoning underpinning that holding and compels us to reconsider whether we have jurisdiction to review denials of a motion for a continuance.  We conclude that we do.

Our determination in *Abu-Khaliel* rested in part on a distinction that we drew between a determination at the discretion of the IJ and one at the discretion of the Attorney General, the former not being precluded by § 1152(a)(2)(B)(ii).  *See Abu-Khaliel*, 436 F.3d at 632.  In *Kucana*, however, the Supreme Court found no such distinction and held that the "adjudicator in immigration cases . . . exercises authority delegated by the Attorney General."  130 S. Ct. at 832.  *Kucana* further held that 8 U.S.C. § 1252(a)(2)(B) precludes judicial review of determinations of the Attorney General—and of the IJ—made discretionary by statute, but does not preclude review of those determinations made discretionary by regulation.  *Id.* at 831.  An IJ's discretion to grant a motion for a continuance derives not from statute but from 8 C.F.R. § 1003.29, and, therefore, we hold that the denial of such a motion is subject to review by this court.  *Cf. Thimran v. Holder*, 599 F.3d 841, 844–45 (8th Cir. 2010) (holding that *Kucana* compelled the conclusion that

appellate courts have jurisdiction to review denials of motions for a continuance); *Juarez v. Holder*, 599 F.3d 560, 562 (7th Cir. 2010) (finding that *Kucana* foreclosed the government's argument that § 1252(a)(2)(B) precludes review of motions for a continuance by a federal appellate court). Consequently, we will next address the merits of Kwak's claim.

III.

"Because the BIA did not summarily affirm or adopt the IJ's reasoning and provided an explanation for its decision, we review the BIA's decision as the final agency determination." *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007) (citations omitted). We "review the BIA's affirmance . . . under an abuse-of-discretion standard." *Id.* (citing *Abu-Khaliel*, 436 F.3d at 634). "In determining whether the Board abused its discretion, [we] must decide whether the denial . . . was made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination. . . ." *Abu Khaliel*, 436 F.3d at 634 (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (omissions in original).

An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. §§ 1003.29, 1240.6. "Finding 'good cause' is crucial since a continuance, in effect, allows an alien to remain in the United States for a period of time without any defined legal immigration status. An unreasonable continuance would thwart the operation of the statutes providing for removal of inadmissible . . . and deportable . . . aliens." *Ukpabi v. Mukasey*, 525 F.3d 403, 407–08 (6th Cir. 2008). Here, the BIA determined that the IJ had not abused his discretion in finding no good cause because Kwak had received numerous continuances, he had failed to demonstrate at any time that the pending appeal of his denied application for a waiver of excludability was likely to be successful, and the DHS had opposed a further continuance. We agree.

Kwak argues that the IJ abused his discretion by denying the continuance when, through no fault of his own, a petition for a waiver of excludability was pending before the AAU. However, we have previously held that a pending immigration petition does not entitle an alien to a continuance: "It cannot be the case that anytime an alien files an I-485 petition or has an I-130 petition filed on his behalf, the IJ is *required* to grant a continuance. Such a view would conflict with the discretion that the regulations explicitly provide to the

IJ." *See id.* at 408 (quoting *Ilic-Lee*, 507 F.3d at 1047–48) (internal quotation marks omitted) (emphasis in original). In particular, we have declined to find an abuse of discretion when the "petitioner did 'not provide any evidence that suggested a likelihood of success on the merits [of the pending petition,]'" and the IJ "'had little reason to believe [petitioner] would not be able to obtain an adjustment of status.'" *Cika v. Holder*, 344 F. App'x 208, 217 (6th Cir. 2009) (quoting *Ilic-Lee*, 507 F.3d at 1047–48) (alteration in original); *see also El Harake v. Gonzales*, 210 F. App'x 482, 490 (6th Cir. 2006) (finding no abuse of discretion when the IJ denied a continuance "because El Harake presented no evidence to show that the I-130 petition would be successful"). Similarly, the BIA in the instant case noted that the USCIS had already rejected Kwak's application for a waiver and found that Kwak "has not provided evidence outlining the grounds for his administrative appeal or to support his claim that he is likely to prevail and be granted adjustment of status." The BIA's conclusion that the IJ did not abuse its discretion in denying the continuance is consistent with our prior jurisprudence and thus was not itself an abuse of discretion.

Moreover, in *Abu-Khaliel*, *El Harake*, and *Cika*, we found that the IJs did not abuse their discretion by denying requests for a continuance based on pending petitions for status adjustment that the USCIS had yet to adjudicate. *See Abu-Khaliel*, 436 F.3d at 634; *Cika*, 344 F. App'x at 217; *El Harake*, 210 F. App'x at 489–90. We found no abuse of discretion in *Cika* even though the pending I-130 was eventually granted after the IJ denied a continuance, see 344 F. App'x at 217, or in *El Harake*, in which the IJ denied a continuance for a pending I-130 petition despite the fact that no prior continuances had been granted, 210 F. App'x at 484. Kwak's case presents an even less compelling argument for continuance because the USCIS had the opportunity to—and did—adjudicate his I-601 petition, issuing a final, negative determination in 2003. *See also Ukpabi*, 525 F.3d at 405, 408 (finding no abuse of discretion when a petition was pending but the USCIS had issued a notice of intent to deny that petition); *Ilic-Lee*, 507 F.3d at 1047 (declining to find abuse of discretion when a motion to reopen a denied I-130 "had been pending without apparent action, for over 14 months" (internal quotation marks and citation omitted)). The BIA, therefore, did not abuse its discretion despite the pendency of Kwak's I-601.

Kwak next argues that the BIA abused its discretion by considering the number and length of the continuances granted throughout Kwak's exclusion proceedings. In *Abu-*

*Khaliel*, we found that an IJ did not abuse his discretion in denying a continuance based on the length of two—not nine—prior continuances and on a finding that the petitioner "had violated the laws of the United States." 436 F.3d at 634–35 ("These [two] reasons alone provide sufficient basis for this court to find that the IJ did not abuse her discretion."). In *Gjeluci v. Mukasey*, 303 F. App'x 274, 277 (6th Cir. 2008), we stated that the granting of two continuances demonstrated that "the IJ was not focused myopically on expediency to the detriment of fairness" and, therefore, found no abuse of discretion. The facts that Kwak received nine prior continuances since proceedings began in 1996 and that the IJ acceded in administratively closing his case for four years to permit adjudication of his petitions to the USCIS likewise indicate that the denial of a further continuance was not aimed at a speedy resolution of the case at the expense of fairness.

Finally, the BIA did not abuse its discretion when it relied, in part, on the DHS's opposition to a continuance. In *Ilic-Lee*, we pointed to the DHS's opposition to the motion for continuance to distinguish that case from *Badwan v. Gonzalez*, 494 F.3d 566 (6th Cir. 2007), in which we found that the IJ did abuse his discretion in denying a motion for continuance in part because the government had not opposed the motion. 507 F.3d at 1048; *see Badwan*, 494 F.3d at 568 ("This lack of opposition . . . eliminates a traditional ground for denying such motions—prejudice to the opposing party . . . ."). Moreover, in the recent *Matter of Hashmi* decision, the BIA held that the DHS's response to the motion is one factor that an IJ may consider in determining whether good cause exists for issuing a continuance. 24 I. & N. Dec. at 791. Because the BIA did not rest its decision to deny Kwak's motion solely on the DHS's opposition, and because partial reliance on this factor has been found not to be an abuse of discretion in prior cases, the BIA's reliance on this ground did not render its decision an abuse of discretion here.

IV.

For the foregoing reasons, we affirm the BIA's decision and deny Kwak's petition for review.